# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

ANTWAN RHINES,

               Petitioner,              :    Case No. 3:13-cv-238

  - vs -                           District Judge Walter Herbert Rice
                                    Magistrate Judge Michael R. Merz

DONALD MORGAN, Warden,

                           :

               Respondent.

---

# REPORT AND RECOMMENDATIONS

---

This is an action pursuant to 28 U.S.C. § 2254 for a writ of habeas corpus. On the Court's Order for Answer (Doc. No. 3), the State has filed the state court record (Doc. No. 4) and a Return of Writ (Doc. No. 5). Petitioner has now filed a Reply (Doc. No. 7) and the case is ripe for decision.

Rhines pleads the following Grounds for Relief:

> **Ground One:** A trial court commits reversible error, which materially prejudices an accused, and violates an accused's constitutional rights to a fair and impartial trial and to confront and cross examine the witnesses called against him, when it denies an accused the right to ask the name of the witnesses' prior felony convictions and otherwise ordered trial counsel to misinform the jury by reclassifying and reidentifying the actual prior conviction.

> **Ground Two:** When a trial court becomes aware of potential juror misconduct it must make at least a minimal further inquiry to resolve such allegation so as to ensure that an accused's constitutional rights to a fair and impartial trial are not violated.

> **Ground Three:** Where all surrounding facts and circumstances reasonably indicate that a juror was coerced during deliberations by the trial court's dynamite/*Howard* charge, the accused has been

1

denied his Ohio and U.S. constitutional rights to a fair and impartial trial.

**Ground Four:** An accused is denied the effective assistance of counsel in violation of his Ohio and U.S. constitutional rights to counsel, when: 1) Appointed trial counsel fails to call as a witness or otherwise consult any expert witnesses whatsoever, where counsel has knowledge of the prosecution's intent to offer expert witnesses and scientific testimony and evidence, including, but not limited to DNA, in its own case in chief; and 2) Counsel does not request a continuance when [counsel] learned of expert of expert [sic] or other scientific evidence during trial due to non-adherence to discovery request showing counsel's lack of preparation making the adversarial process non-functional.

(Petition, Doc. No. 2, PageID 50-52.)

## Procedural History

On December 12, 2008, Antwan Rhines and Runyan Yarborough were in a stolen Chevrolet Malibu when it collided with a Pontiac Grand Prix and a Toyota minivan at Main and Washington Streets in downtown Dayton, Ohio. The driver of the Grand Prix was killed and his three passengers were seriously injured. On May 5, 2010, the Montgomery County Grand Jury indicted Rhines on one count of aggravated vehicular homicide, three counts of vehicular assault, and one count each of receiving stolen property and failure to stop and provide identification after an accident. Rhines was convicted on all counts at trial in October 2010 and sentenced to the term of imprisonment he is now serving in Respondent's custody.

Following conviction and denial of a motion for new trial, Rhines appealed to the Montgomery County (Second District) Court of Appeals which affirmed the conviction. *State v. Rhines*, 2012-Ohio-3393, 2012 Ohio App. LEXIS 2986 (2nd Dist. July 27, 2012). The Ohio Supreme Court declined to exercise jurisdiction over a further appeal. *State v. Rhines,* 133 Ohio

St. 3d 1492 (2012). Rhines then filed the instant Petition.

## Factual Background

The Second District Court of Appeals summarized the relevant facts in its opinion:

> [**P1**] Defendant-appellant Antwan Rhines appeals his conviction and sentence for aggravated vehicular homicide, in violation of R.C. 2903.06(A)(2)(a), a felony of the third degree; three counts of vehicular assault, in violation of R.C. 2903.08(A)(2)(b), all felonies of the fourth degree; one count of receiving stolen property, in violation of R.C. 2913.51(A), a felony of the fourth degree; and one count of failure to stop after an accident, in violation of R.C. 4549.02, a misdemeanor of the first degree. Rhines filed a timely notice of appeal with this Court on January 3, 2011.

> [**P2**] The basis for the instant appeal occurred on December 12, 2008, when a stolen Chevrolet Malibu driven by Rhines crashed into two vehicles, a Toyota Sienna minivan and Pontiac Grand Prix, after running a red light at the intersection of South Main and Washington Streets in downtown Dayton, Ohio. The driver of the Grand Prix, Dwayne Bullock, died as a result of injuries sustained in the accident. The remaining three passengers: Bullock's wife, Dara; Bullock's brother, Joseph Bullock; and Joseph's fiancee (now wife), Amanda, sustained serious injuries requiring long term medical treatment. The driver of the Sienna, Tammy Dolphin, did not suffer any injuries in the collision.

> [**P3**] After crashing into the two vehicles, Rhines fled the scene of the crash on foot and was apprehended by Dayton Police Sergeant Mark Ponichtera at the intersection of 5th Street and Main, a short distance from the accident. Sgt. Ponichtera testified that Rhines was walking with a pronounced limp when he was apprehended. Rhines also met the description of an individual observed climbing out of the stolen Malibu and fleeing the scene of the crash.

*State v. Rhines, supra,* ¶¶ 1-3.

Rhines does not plead actual innocence as a Ground for Relief, but the whole thrust of his

Petition is that he is innocent because Yarborough was the driver. On direct appeal, Rhines

claimed his conviction was against the manifest weight of the evidence.  He does not pursue that claim here, but the court of appeals' summary of the evidence is important background for considering Rhines' assertion of actual innocence:

> **[*P26]** During the trial, the key issue before the jury was whether Rhines was driving the stolen vehicle which caused the accident and resulted in the death of Dwayne Bullock, as well as serious injuries to three other people in his vehicle. In this regard, the State principally relied on the testimony of David Humphrey, a limousine driver who was present in the parking lot of a McDonalds Restaurant directly across from where the collision occurred. Humphrey testified that immediately prior to the collision, he observed a Chevrolet Malibu with two individuals in the front seat speeding down Washington Street at approximately sixty-five to seventy miles per hour. Humphrey stated that the Chevrolet ran a red light and then crashed into a white minivan and then hit the Pontiac driven by Dwayne Bullock which brought all of the vehicles involved in the collision to a stop. In the initial moments after the crash, Humphrey stated that he observed a black male wearing dark pants, a brown jacket, and a knit hat climb out of the driver's side of the vehicle and begin walking towards the back of the BP gas station on the opposite side of the street. Humphrey testified that the man, later identified as Rhines, was walking quickly but with a pronounced limp.

> **[*P27]** Humphrey testified that he got back in his limousine and tried to follow the man fleeing the scene of the collision. Humphrey called 911 to report the collision, and the fleeing driver. Humphrey gave the 911 operator a description of the man based on the clothes he was wearing. The operator told Humphrey to go back to the scene of the collision and to stop following the suspect. Humphrey testified that he followed the man for a moment longer, but eventually returned to scene of the collision and informed the emergency personnel there of what he had witnessed. Upon returning to the scene, Humphrey observed a black male, later identified as Runyon Yarborough, lying next to the passenger side of the Chevrolet being attended to by emergency personnel.

> **[*P28]** After observing Rhines walking/limping northbound on Main Street and taking him into custody, Sgt. Ponichtera arrived at the scene of the collision. Based on his clothing, Humphrey identified Rhines as the man he observed climb out of the driver's side of the Chevrolet and leave the scene by walking northbound on Main Street. We note that although Rhines' DNA was not found

4

in the Chevrolet, he was observed by Humphrey to be the first individual to climb out of the vehicle on the driver's side within seconds of the collision. Humphrey's testimony clearly supports the State's theory that Rhines was the driver of the stolen Chevrolet which caused the collision that took Dwayne Bullock's life.

[*P29] It is undisputed that Yarborough's DNA was found on the driver's side airbag. Nevertheless, the State presented evidence that the passenger side door would not open, thus requiring Yarborough to climb out the driver's side door and providing an explanation as to how his DNA was deposited on the deployed airbag. Mary J. Cicco, a forensic expert from the Miami Valley Regional Crime Lab, testified that the absence of Rhines' DNA from the deployed airbag on the driver's side did not preclude him from being the driver of the vehicle, noting that no DNA was deposited on the airbag deployed on the passenger side.

[*P30] Upon review, we conclude that Rhines' conviction is not against the manifest weight of the evidence. The credibility of the witnesses and the weight to be given their testimony were matters for the jury to resolve. Rhines presented no evidence at trial. Instead, Rhines attempted to undermine the State's case by discrediting the testimony of the various individuals who witnessed all or part of the collision and its aftermath. Specifically, Rhines attempted to establish that Yarborough was the driver of Chevrolet. We cannot say that the jury lost its way simply because it rejected Rhines' contention that Yarborough was the driver. Humphrey observed the collision and positively identified Rhines as the individual he saw climb out the vehicle on the driver's side and flee the scene.

[*P31] We note that witness Michael Davis testified that he did not see the collision occur nor did he arrive at the scene until three to five minutes after the crash. Upon arriving at the scene, however, he observed a single black male crawl out of the driver's side of the Chevrolet, walk to the passenger side of the vehicle, and lay down on the ground. When Humphrey returned to the scene shortly after following Rhines, he observed Yarborough laying on the ground on the passenger side of the vehicle. As stated previously, Humphrey testified that Rhines climbed out of the driver's side of the vehicle within seconds after the crash occurred, well before Davis arrived at the scene and observed Yarborough climb out of the vehicle. This testimony supports the State's theory that Rhines was driving the vehicle when the collision occurred because he climbed out of the driver's side of the Chevrolet first. Having reviewed the entire record, we cannot clearly find that the evidence

> weighs heavily against a conviction, or that a manifest miscarriage
> of justice has occurred.

*Id.* ¶¶ 26-31. Under § 2254(e)(1), a state court's findings of fact are presumed correct and may be rebutted by the petitioner only by clear and convincing evidence to the contrary. *Cornwell v. Bradshaw*, 559 F.3d 398, 405 (6th Cir. 2009); *Mitchell v. Mason,* 325 F.3d 732, 737-38 (6th Cir. 2003); *Warren v. Smith,* 161 F.3d 358, 360-61 (6th Cir. 1998). This statutory presumption of correctness extends to factual findings made by state appellate courts on the basis of their review of trial court records. *Girts v. Yanai,* 501 F.3d 743, 749 (6th Cir. 2007); *Mason v. Mitchell,* 320 F.3d 604, 614 (6th Cir. 2003); *Brumley v. Wingard,* 269 F.3d 629, 637 (6th Cir. 2001), *citing Sumner v. Mata*, 449 U.S. 539, 546-47 (1981). The Court proceeds with that presumption of correctness in mind.

## Ground One: Denial of Right to Confrontation and a Fair Trial

### Fair Presentation

A principal witness against Rhines was Runyan Yarborough who was unquestionably an occupant of the stolen Malibu at the time of the collision; Rhines claims Yarborough was actually the driver. In his First Ground for Relief, Rhines claims the trial court violated his constitutional right to confront the witnesses against him under the Sixth Amendment and his right to a fair trial under the Fourteenth Amendment by not allowing defense counsel to disclose to the jury during cross-examination that Yarborough had himself been convicted of vehicular assault several years before the collision in this case.

Rhines did not fairly present this claim to the court of appeals on direct appeal as a

6

federal constitutional claim. Instead, he presented the issue solely as a claim that the trial judge abused his discretion under Ohio evidence law. His Fifth Assignment of Error reads "[t]he court committed reversible error when it denied Defendant from naming the witness, Runyon Yarbrough's [sic] prior conviction for vehicular assault." (Appellant's Brief, State Court Record, Doc. No. 4, PageID 1254.) Appellate counsel argued the issue solely in terms of Ohio evidence law, citing only Ohio case law authority. *Id.* PageID 1276-79.

The court of appeals did not understand it was being faced with a federal constitutional issue. Judge Donovan's majority opinion on the Fifth Assignment of Error reads in full:

[**P44**] Rhines' fifth assignment of error is as follows:

[**P45**] "THE TRIAL COURT COMMITTED REVERSIBLE ERROR WHEN THE COURT PREVENTED DEFENDANT FROM NAMING THE WITNESS, RUNYON YARBOROUGH'S PRIOR CONVICTION FOR VEHICULAR ASSAULT."

[**P46**] In his fifth assignment, Rhines contends that the trial court abused its discretion when it limited defense counsel's impeachment of Yarborough pursuant to Evid. R. 609(A), by refusing to permit defense counsel to elicit from Yarborough the fact of his prior conviction for vehicular assault. The trial court ruled that the "evidence [was] being used by *** the defense to show that [Yarborough's] perhaps guilty; he's the perpetrator because he's got a prior similar conviction." Alternatively, the trial court permitted defense counsel to refer to the prior vehicular assault conviction as simply, an "assault."

[**P47**] With respect to the admission or exclusion of evidence, the trial court has broad discretion and its decision in such matters will not be disturbed by a reviewing court absent an abuse of discretion that has caused material prejudice. *State v. Noling*, 98 Ohio St.3d 44, 2002 Ohio 7044, 781 N.E.2d 88.

[**P48**] As the Supreme Court of Ohio has determined:

"Abuse of discretion" has been defined as a attitude that is unreasonable, arbitrary or unconscionable. It is to be expected that most instances of abuse of discretion will result in decisions that

are simply unreasonable, rather than decisions that are unconscionable or arbitrary.

A decision is unreasonable if there is no sound reasoning process that would support that decision. It is not enough that the reviewing court, were it to decide the issue *de novo*, would not have found that reasoning process to be persuasive, perhaps in view of countervailing reasoning processes that would support a contrary result. *AAAA Enterprises, Inc. v. River Place Community Redevelopment*, 50 Ohio St.3d 157, 161, 553 N.E.2d 597 (1990).

[*P49]  Evid. R. 609(A)(1) states as follows:

(A) General rule

For the purpose of attacking the credibility of a witness:

(1) subject to Evid. R. 403, evidence that a witness other than the accused has been convicted of a crime is admissible if the crime was punishable by death or imprisonment in excess of one year pursuant to the law under which the witness was convicted.

[*P50]  Evid.R. 403(A) provides:

Exclusion mandatory. Although relevant, evidence is not admissible if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury.

[*P51] In the instant case, Rhines argues that the trial court should have permitted him to introduce evidence of Yarborough's prior conviction for vehicular assault. Rhines asserts that he "simply wanted to impeach [Yarborough]'s credibility for truthfulness by introducing the fact that [he] has a prior conviction for vehicular assault," the exact same crime for which Rhines had been charged. As stated previously, the central issue in this case was who was driving the vehicle when it crashed.

[*P52] We conclude that the trial court erred when it reclassified Yarborough's vehicular assault conviction as simple "assault". Any danger that the jury would misconstrue the prior conviction as substantive evidence that Yarborough was the driver of the Chevrolet Malibu was *de minimis* as Yarborough was not on trial

8

nor under indictment. Thus, the "prejudicial impact" of this evidence was limited. There is no justification for calling the prior conviction something different that what it is. Although the new labeling of Yarborough's prior conviction was an abuse of discretion, we cannot find that it constituted material prejudice to Rhines.

[*P53] Rhines' fifth assignment of error is overruled.

*State v. Rhines, supra,* ¶¶ 44-53.  Judge Donovan does not mention any federal constitutional issue.  Judges Fain and Hall wrote concurring opinions focusing on this Assignment of Error; neither mentioned any federal constitutional question.  Judge Fain's concurrence is instructive, however, in light of Rhines' *pro se* argument in this case:

> **[*P64]** Rhines conceded in oral argument that the only legitimate purpose for introducing Yarborough's conviction for Vehicular Assault was to impeach his testimony, not to support Rhines's contention that Yarborough, not Rhines, was the driver of the vehicle in this case. Unless a prior felony conviction is for a crime of moral turpitude, involving dishonesty, the name of the offense does not establish any greater likelihood that the witness is a dishonest person, beyond the mere fact that the witness has committed a felony in the past. Here, in addition to the mis-named "Assault" conviction, Rhines was able to establish that Yarborough had been convicted in the past of multiple felonies. Therefore, the misnomer of Yarborough's Vehicular Assault conviction was not likely to have any impact on the jury's assessment of Yarborough's credibility. In other words, that one of Yarborough's multiple felony convictions was Vehicular Assault, not Assault, would not have done any greater damage to Yarborough's credibility in the eyes of the jury. Therefore, I agree that the error was harmless.

*Id.* at ¶ 64.

When a habeas petitioner has failed to fairly present his federal constitutional claims to the state courts, he has procedurally defaulted on those claims and cannot obtain merit review in habeas.  To preserve a federal constitutional claim for presentation in habeas corpus, the claim must be "fairly presented" to the state courts in a way which provides them with an opportunity

to remedy the asserted constitutional violation, including presenting both the legal and factual basis of the claim.  *Williams v. Anderson,* 460 F.3d 789, 806 (6th Cir. 2006); *Levine v. Torvik*, 986 F.2d 1506, 1516 (6th Cir.), *cert. denied,* 509 U.S. 907 (1993), overruled in part on other grounds by *Thompson v. Keohane,* 516 U.S. 99 (1995); *Riggins v. McMackin,* 935 F.2d 790, 792 (6th Cir. 1991). The claim must be fairly presented at every stage of the state appellate process. *Wagner v. Smith,* 581 F.3d 410, 418 (6th Cir. 2009).  While the factual basis of the First Ground for Relief was presented to the Ohio courts, no constitutional claim was made.  If a petitioner's claims in federal habeas rest on different theories than those presented to the state courts, they are procedurally defaulted.  *Williams,* 460 F.3d at 806; *Lorraine v. Coyle*, 291 F.3d 416, 425 (6th Cir. 2002), *citing Wong v. Money*, 142 F.3d 313, 322 (6th Cir. 1998); *Lott v. Coyle*, 261 F.3d 594, 607, 619 (6th Cir. 2001)("relatedness" of a claim will not save it).  Because Rhines failed to fairly present his constitutional claims in Ground One to the Ohio courts, they are procedurally defaulted and should be dismissed with prejudice.

Although the Warden does not claim procedural default on this Ground for Relief, neither has he waived it and it is therefore appropriate for the Court to raise it *sua sponte*.  *White v. Mitchell,* 431 F.3d 517, 524 (6th Cir. 2005)(capital case); *Sowell v. Bradshaw*, 372 F.3d 821, 830 (6th Cir. 2004); *Lorraine*, 291 F.3d 416 (§ 2254 capital case)*; Elzy v. United States,* 205 F.3d 882 (6th Cir. 2000)(§ 2255 case);  *Lovins v. Parker*, 712 F.3d 283 (6th Cir. 2013), *citing Howard v. Bouchard*, 405 F.3d 459, 476 (6th Cir. 2005).  See *Wood v. Milyard*, 566 U.S. ___, 132 S. Ct. 1826, 182 L. Ed. 2d 733 (2012).

**Merits**

In addition to being procedurally defaulted, Rhines' First Ground for Relief is without merit.

The Supreme Court has held that "a primary interest secured by [the Confrontation Clause] is the right of cross-examination."  *Davis v. Alaska*, 415 U.S. 308, 315, *quoting Douglas v. Alabama,* 380 U.S. 415, 418 (1965).  The Court relied on Professor Wigmore

> The main and essential purpose of confrontation is *to secure for the opponent the opportunity of cross-examination*. The opponent demands confrontation, not for the idle purpose of gazing upon the witness, or of being gazed upon by him, but for the purpose of cross-examination, which cannot be had except by the direct and personal putting of questions and obtaining immediate answers.

*Davis* at 315, *quoting* 5 J. Wigmore, Evidence § 1395, p. 123 (3d ed. 1940). (Emphasis in original.)  In *Davis* the Court held the possible exposure of witness bias by cross-examination would override a state interest in the confidentiality of juvenile court records.

Nevertheless, the Confrontation Clause does not override all limitations on cross-examination arising from state evidence law. Subsequent to *Davis*, the Supreme Court has held "trial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." *Delaware v. Van Arsdall*, 475 U.S. 673, 681 (1986). The Sixth Circuit has held "[t]his includes discretion to impose limits based on concerns about harassment, prejudice, confusion of the issues, witness safety, or interrogation that is repetitive or only marginally relevant. *Boggs v. Collins,* 226 F.3d 728, 736 (2000), *citing Van Arsdall* and *King v. Trippett*, 192 F.3d 517, 524 (6th Cir. 1999)."

In this case the issue of the scope of cross-examination of Yarborough was dealt with pre-trial.  When he learned Yarborough would be called, Judge Gowdon appointed counsel for him, then conducted a hearing to ensure he understood his rights.  Defense counsel, Mr. Rezabeck, advised the trial court that he wanted to identify one of Mr. Yarborough's prior convictions as having been for vehicular assault (State Court Record, Trial Tr., Doc. No. 4-6, PageID 592-93).  The prosecutor relied on Ohio R. Evid. 609 and 403 to argue that because Rhines claimed Yarborough was the driver, the name of the offense of prior conviction had no probative value and was prejudicial.  *Id.* at PageID 594.  Rezabeck responded that it could come in to show "that this is a plan, operation, all of that." *Id.* at PageID 595.  Judge Gowdown ruled:

> Well, the Court's ruling's going to be that the defense cannot elicit the name of that conviction as a vehicular assault.  I find that the purpose of prior convictions is for impeachment.  This is being used by the State – by the defense to show that he's perhaps guilty; he's the perpetrator because he's got a prior similar conviction.

*Id.* at PageID 595-96.

Judge Gowdown's analysis is correct:  the purpose of admitting prior felony convictions of any witness is to impeach the credibility of the witness.  The impeachment value is not correlated with the nature of the prior crime.  Rather, all prior felony convictions are admissible as a remnant of the common law rule that convicted felons were altogether incompetent to be witnesses. McCormick on Evidence § 42 (4th ed. 1992).  Here Yarborough's prior conviction for vehicular assault had no more relevance to his credibility than his prior weapons or drugs convictions.  On the other hand, it had the possibility on which Rhines and his counsel relied that the jury would treat it as propensity evidence, i.e., that because Yarborough had used a car to assault someone before, he was the driver on this occasion.  As noted in Judge Fain's concurrence on direct appeal, that would have been an improper use of the prior conviction, a

point Rhines' appellate attorney conceded at oral argument.  Perhaps it would have been better, as Judge Hall suggested in his concurrence, if the vehicular assault had been referred to as "another felony conviction."  This would have been accurate, but it seems highly unlikely it would have done much more to impeach Yarborough than the revelation that he had drug and weapons felony convictions.

In sum, Judge Gowdown's limitation on cross-examination of Yarborough is in no way inconsistent with United States Supreme Court precedent under the Confrontation Clause.

With respect to Rhines' claim that the exclusion rendered his trial unfair in violation of the Fourteenth Amendment, he cites no Supreme Court law and none is known to the Court which makes the inability to disclose a witness's conviction for a similar crime a denial of a fair trial.  The trial would have been unfair to the public if Rhines had been able to suggest that Yarborough was the driver without himself taking the stand and testifying to that effect.

Because the First Ground for Relief is barred by Rhines' failure to fairly present it to the state courts and also fails on the merits, it should be dismissed with prejudice.


**Ground Two:  Juror Misconduct**


In his Second Ground for Relief, Rhines asserts he was denied a fair trial by juror misconduct.

In the Petition, Rhines seemed not to plead the issue of juror note-taking *per se*: "although note taking in and of itself may not have substantially prejudiced the Petitioner. . . ." (Petition, Doc. No. 2, PageID 51.)  However, in the Reply, he resumes an attack on juror note taking *per se*:

13

> During the trial where there was not complex or complicated discussion of information some of the jurors' attention were focused on taking notes instead of paying attention [to] what was going on in the Courtroom or the expressions of the witness that was testifying.  Showing that this was a definite distraction from what the focus of their job was to do during the trial and that is to listen to the information being given to them and observe the witness that is giving the information to indicate whether by observation and listening to the witness whether in fact the witness['s] testimony is believable or not.

(Reply, Doc. No. 7, PageID 1455.)

A claim of juror misconduct was presented to the trial court in a motion for new trial and then on direct appeal as the First Assignment of Error.  The claim as presented on appeal raised as issues both note taking *per se* and juror misconduct with the notes.  The court of appeals decided that claim as follows:

> **[*P6]** Rhines' first assignment of error is as follows:
>
> **[*P7]** "JUROR MISCONDUCT OCCURRED DURING JURY DELIBERATIONS TO THE DETRIMENT OF DEFENDANT, AND AS SUCH, DEFENDANT WAS DENIED A FAIR TRIAL."
>
> **[*P8]** In his first assignment, Rhines contends that the trial court erred by allowing members of the jury to takes notes during the trial. Rhines further argues that the trial court erred when it allowed the jurors to use their notes as substantive evidence during deliberations. Rhines asserts that this occurred because the trial court failed to instruct the jury regarding the use of their notes during deliberations.
>
> **[*P9]** A trial court has the discretion to either permit or prohibit note taking by jurors. *State v. Waddell*, 75 Ohio St.3d 163, 1996 Ohio 100, 661 N.E.2d 1043. Rhines complains that the jurors should not have been allowed to take notes, citing general concerns over the potential for distracting jurors from concentrating on witnesses and the evidence. Rhines argues that the facts presented at trial were relatively uncomplicated. Thus, Rhines asserts that it was unnecessary for the jurors to take notes. Rhines, however, failed to object to the trial court's decision to permit note-taking by jurors at any point during trial. By failing to object at trial, Rhines

has waived all but "plain error." *State v. Waddell*, 75 Ohio St.3d at 166. Plain error does not exist unless but for the error the outcome of the trial clearly would have been otherwise. *State v. Wickline*, 50 Ohio St.3d 114, 552 N.E.2d 913 (1990); *State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804 (1978).

[**P10**] Initially, we note that there is no requirement that a case be deemed "complicated" before jurors are permitted to take notes. Nevertheless, we note that the record establishes that over twenty witnesses testified during the course of the five-day trial. In our view, the large number of witnesses who testified coupled with the length of the trial supports the trial court's decision to permit the jury to take notes, and the court did not abuse its discretion in this regard. Additionally, Rhines has failed to establish that but for the trial court's decision to permit note taking by the jurors, the outcome of the trial would have been any different.

[**P11**] We further note that, contrary to Rhines' assertion in his merit brief, the trial court did properly instruct the jury regarding note taking and its use of said notes during deliberations. During its preliminary instructions to the jury immediately prior to the beginning of the trial, the trial court instructed the jury as follows:

> The Court: During this trial the court will permit the jurors to take notes. If you desire to do so, you may do that. No juror is required to take notes. The taking of notes is entirely a matter of personal choice for each juror. The jurors who choose not to take notes must not be influenced by those who do take notes. The fact that the notes taken by a juror support his or her recollection in no way makes his or her memory more reliable than that of other jurors who do not take notes.
>
> Notes are merely a memory aid, and must not take precedence over your independent memory of the facts. Do not let the taking of notes divert your attention from what is being said or is happening at the courtroom during the trial. Some persons believe that taking notes is not helpful because it may distract a person's attention and interfere with hearing all the evidence. All notes are confidential for the consideration of that juror only. Each note taker will leave his or her notes on the chair during breaks and at the end of the day will be collected by the Bailiff. When deliberations take place you will be permitted to take your notes into the jury room and use them as a memory aid. All notes will be returned to the

Bailiff for destruction at the time that the jury is discharged.

**[\*P12]** The preliminary instruction provided by the trial court mirrors the language set forth in Ohio Jury Instruction-CR 401.19 regarding note taking by jurors during trial. Accordingly, the trial court properly instructed the jury regarding its ability to take notes during the trial.

**[\*P13]** Lastly, Rhines asserts that the jurors improperly used their notes during deliberations by sharing the contents of their notes with one another. Thus, Rhines argues that the trial court erred when it overruled his motion for new trial based upon his claim of juror misconduct with respect to the alleged sharing of notes taken during trial. With the exception of his unsupported allegation that jurors improperly shared and compared their notes during deliberations, Rhines did not adduce any evidence in the record which establishes that the jurors who took notes shared the contents of their notes with other jurors. We also note that Rhines failed to attach any affidavits to his motion for a new trial which support his contention that the jurors acted improperly. Simply put, there is no evidence of how the jurors used their notes during deliberations, if, in fact, any notes were even taken. Accordingly, the trial court did not err when it permitted the jurors to take notes during the trial after providing the jury with the proper preliminary instruction taken verbatim from OJI-CR 401.19.

**[\*P14]** Rhines' first assignment of error is overruled.

*State v. Rhines, supra*, ¶¶ 6-14.

The Warden asserts Ground Two is procedurally defaulted in two ways. First, as to note taking *per se*, trial counsel never objected and thus waived all but plain error review. *Id.* at ¶ 9. As to juror misconduct with the notes, Rhines failed to produce any evidence and thus forfeited the claim. *Id.* at ¶ 13.

The procedural default defense in habeas corpus is described by the Supreme Court as follows:

In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an adequate and independent state

16

> procedural rule, federal habeas review of the claims is barred
> unless the prisoner can demonstrate cause of the default and actual
> prejudice as a result of the alleged violation of federal law; or
> demonstrate that failure to consider the claims will result in a
> fundamental miscarriage of justice.

*Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *see also Simpson v. Jones*, 238 F.3d 399, 406 (6th Cir. 2000). That is, a petitioner may not raise on federal habeas a federal constitutional right he could not raise in state court because of procedural default. *Wainwright v. Sykes*, 433 U.S. 72 (1977); *Engle v. Isaac*, 456 U.S. 107, 110 (1982). Absent cause and prejudice, a federal habeas petitioner who fails to comply with a State's rules of procedure waives his right to federal habeas corpus review. *Boyle v. Million*, 201 F.3d 711, 716 (6th Cir. 2000)(citation omitted); *Murray v. Carrier*, 477 U.S. 478, 485 (1986); *Engle*, 456 U.S. at 110; *Wainwright*, 433 U.S. at 87. *Wainwright* replaced the "deliberate bypass" standard of *Fay v. Noia,* 372 U.S. 391 (1963). *Coleman,* 501 U.S. at 724.

The Sixth Circuit Court of Appeals requires a four-part analysis when the State alleges a habeas claim is precluded by procedural default. *Guilmette v. Howes,* 624 F.3d 286, 290 (6th Cir. 2010)(*en banc)*; *Eley v. Bagley*, 604 F.3d 958, 965 (6th Cir.); *Reynolds v. Berry*, 146 F.3d 345, 347-48 (6th Cir. 1998), *citing Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986); *accord Lott v. Coyle*, 261 F.3d 594, 601-02 (6th Cir. 2001); *Jacobs v. Mohr*, 265 F.3d 407, 417 (6th Cir. 2001).

> First the court must determine that there is a state procedural rule
> that is applicable to the petitioner's claim and that the petitioner
> failed to comply with the rule.
> . . . .
> Second, the court must decide whether the state courts actually
> enforced the state procedural sanction, citing *County Court of
> Ulster County v. Allen*, 442 U.S. 140, 149, 99 S.Ct. 2213, 60
> L.Ed.2d 777 (1979).
>
> Third, the court must decide whether the state procedural forfeiture
> is an "adequate and independent" state ground on which the state
> can rely to foreclose review of a federal constitutional claim.

17

> Once the court determines that a state procedural rule was not complied with and that the rule was an adequate and independent state ground, then the petitioner must demonstrate under *Sykes* that there was "cause" for him to not follow the procedural rule and that he was actually prejudiced by the alleged constitutional error.

*Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986).

With respect to the note taking *per se* claim, Ohio has a contemporaneous objection rule. *State v. Glaros*, 170 Ohio St. 471 (1960).  States have a very strong interest in the contemporaneous objection rule.  *Scott v. Mitchell,* 209 F.3d 854 (6th Cir. 2000), quoting extensively from *Wainwright v. Sykes*, 433 U.S. 72, 88-90 (1977).  Ohio's contemporaneous objection rule is an adequate and independent state ground.  *Hinkle v. Randle,* 271 F.3d 239, 244 (6th Cir. 2001); *Wogenstahl v. Mitchell*, 668 F.3d 307, 334 (6th Cir.  2012),*citing Keith v. Mitchell*, 455 F.3d 662, 673 (6th Cir. 2006); *Nields v.  Bradshaw*, 482 F.3d 442 (6th Cir.  2007); *Biros v. Bagley,* 422 F.3d 379, 387 (6th Cir. 2005); *Mason v. Mitchell*, 320 F.3d 604 (6th Cir. 2003), *citing  Hinkle v. Randle*, 271 F.3d 239, 244 (6th Cir. 2001); *Scott v. Mitchell*, 209 F.3d 854 (6th Cir. 2000), *citing Engle v. Isaac,* 456 U.S. 107, 124-29 (1982).

The court of appeals enforced the contemporaneous objection rule against Rhines when it conducted plain error review.  A state appellate court's review for plain error is enforcement, not waiver, of a procedural default. *Wogenstahl v. Mitchell*, 668 F.3d 307, 337 (6th Cir.  2012); *Jells v. Mitchell,* 538 F.3d 478, 511 (6th Cir. 2008); *Lundgren v. Mitchell,* 440 F.3d 754, 765 (6th Cir. 2006); *White v. Mitchell,* 431 F.3d 517, 525 (6th Cir. 2005); *Biros v. Bagley,* 422 F.3d 379, 387 (6th Cir. 2005); *Hinkle v. Randle,* 271 F.3d 239 (6th Cir. 2001), *citing Seymour v. Walker*, 224 F.3d 542, 557 (6th Cir. 2000)(plain error review does not constitute a waiver of procedural default); *accord, Mason v. Mitchell,* 320 F.3d 604 (6th Cir. 2003).  However, the opinion of a state court on plain error review is still entitled to AEDPA deference if the federal court reaches

the merits despite the procedural default.  *Fleming v. Metrish*, 556 F.3d 520, 532 (6th Cir. 2009).

Once a procedural default has been established, a petitioner may attempt to overcome it by showing excusing cause and prejudice or actual innocence.  *Murray v. Carrier,* 477 U.S. 478 (1986)

Rhines argues his failure to make a contemporaneous objection is excused by his attorney's ineffectiveness.  (Reply, Doc. No. 7, PageID 1455.)  Claims of ineffective assistance of trial counsel as excusing cause must be submitted first to the state courts and can themselves be procedurally defaulted if not properly presented.  *Edwards v. Carpenter,* 529 U.S. 446 (2000).  Rhines raised his counsel's failure to object to note taking as part of his Fourth Assignment of Error on direct appeal.  The court of appeals found there was no ineffective assistance of trial counsel in failing to make this objection because it was proper to allow juror note taking in a five-day, twenty-witness case.  *State v. Rhines, supra*, ¶ 10.  Finding no ineffectiveness in counsel's failure to object to a perfectly proper exercise of trial judge discretion is an objectively reasonable application of the governing Supreme Court law on ineffective assistance of counsel, *Strickland v. Washington,* 466 U. S. 668 (1984).  Rhines has therefore not shown excusing cause.

Rhines' Petition and Reply profess his actual innocence loudly and repeatedly.  The Supreme Court has never recognized actual innocence as a stand-alone habeas corpus claim.  *Herrera v. Collins*, 506 U.S. 390 (1993).  Case law in the Sixth Circuit establishes that the Supreme Court of the United States has never recognized a free-standing or substantive actual innocence claim. *Cress v. Palmer*, 484 F.3d 844, 854 (6th Cir. 2007), *citing Zuern v. Tate*, 336 F.3d 478, 482, n.1 (6th Cir. 2003), and *Staley v. Jones*, 239 F.3d 769, 780, n.12 (6th Cir. 2001).

The Supreme Court has, however, recognized actual innocence as a "gateway" to excuse procedural default of other constitutional claims.  *Schlup v. Delo*, 513 U.S. 298 (1995).

19

> Under the *Schlup* standard . . . the petitioner "must show that it is
> more likely than not that no reasonable juror would have found
> [him] guilty beyond a reasonable doubt." *Schlup*, 513 U.S. at 327;
> see id. at 329 ("[T]he standard requires the district court to make a
> probabilistic determination about what reasonable, properly
> instructed jurors would do. Thus, a petitioner does not meet the
> threshold requirement unless he persuades the district court that, in
> light of the new evidence, no juror, acting reasonably, would have
> voted to find him guilty beyond a reasonable doubt."); see also
> Souter, 395 F.3d at 602. "[T]o be credible a gateway claim requires
> new reliable evidence--whether it be exculpatory scientific
> evidence, trustworthy eyewitness accounts, or critical physical
> evidence--that was not presented at trial." *House v. Bell*, 547 U.S.
> 518, 126 S. Ct. 2064, 2077, 165 L. Ed. 2d 1 (2006) (internal
> quotation marks omitted). We must consider "all the evidence, old
> and new, incriminating and exculpatory, without regard to whether
> it would necessarily be admitted under rules of admissibility that
> would govern at trial." Id. (internal quotation marks omitted).

*McCray v. Vasbinder*, 499 F.3d 568, 571 (6th Cir. 2007)(Sutton, J.)  The Court evaluates Rhines'

actual innocence claim under this standard.

Rhines himself swears that he is innocent (Affidavit attached to Petition, Doc. No. 2,

PageID 64-67).  However, this is not new evidence.  It was completely available to Rhines at the

time of trial and he declined to testify (State Court Record, Doc. No. 4, Trial Tr. PageID 1048-

49).  A criminal defendant cannot roll the dice on a trial without his testimony and then start over

by changing his mind.[1]

Rhines also offers the April 25, 2011, Affidavit of Troy Faulkner, an inmate at the

Southern Ohio Correctional Facility who claims that, on some undisclosed date, Yarborough,

who was then an inmate at SOCF, admitted to Faulkner that Yarborough was driving the red

Malibu on December 12, 2008, "under the influence of ectacy [sic] pills."  The Court does not

find Faulkner's Affidavit to be credible.  First of all, it is uncross-examined hearsay:  the Court

---

[1] At one point Rhines claims his defense counsel prevented him from testifying.  However, the record at the place cited makes clear his lawyer advised him not to testify and Rhines accepted that advice on direct questioning from the trial judge.

knows nothing about the circumstances under which Yarborough and Faulkner supposedly talked or what motivation Faulkner has for giving the affidavit.  Second, it does not explain why Yarborough would have lied at trial in 2010 but was willing to tell the truth just a few months later.  Third, it does not explain why, if this was a friendly gesture on Yarborough's part out of remorse that his friend Twan was wrongfully convicted, Yarborough did not give the affidavit himself.

The balance of Rhines' actual innocence claim consists of his arguing to undercut the value of the evidence presented at trial.  This does not constitute proof of actual innocence within the meaning of that term in *Schlup, supra*.  Rhines has not established that he is actually innocent so as to excuse his procedural default on the note taking *per se* claim or for any other purpose in this case.

As to the juror misconduct claim, Ohio also has a procedural rule that such a claim must be supported by evidence.  This rule is obviously independent of federal law and its importance to state judicial process and therefore its adequacy is obvious.  The court of appeals enforced this rule.  *State v. Rhines, supra*, ¶ 13.  Rhines has not offered any excusing cause except for the rejected actual innocence claim.

Ground Two should therefore be dismissed with prejudice as barred by Rhines' procedural defaults in presenting it to the state courts.


**Ground Three:  Impropriety of the "Dynamite" Charge**


In his Third Ground for Relief, Rhines claims that a juror was coerced by the trial judge's delivery of a "dynamite" charge after the jury announced that it was deadlocked.  He asserts "[i]n

the present case it is presumed by law that the jurors were coerced due to the fact that there were threats between jurors to the minority jurors, and the fact that they miraculously returned a unanimous verdict only some 20 to 30 minutes after hearing the Dynamite charge."  (Petition, Doc. No. 2, PageID 51.)

This claim was raised as the Second Assignment of Error on direct appeal and decided by the Second District as follows:

> **[\*P16]** "THE TRIAL COURT PREJUDICED DEFENDANT THROUGH ITS IMPROPER USE OF THE DYNAMITE/*HOWARD* CHARGE TO THE JURY."
>
> **[\*P17]** In his second assignment, Rhines argues that the trial court erred when it gave a *dynamite*/*Howard* charge to the jury after learning that the jury was deadlocked. *State v. Howard,* 42 Ohio St.3d 18, 537 N.E. 2d 188 (1989). Specifically, Rhines asserts that the trial court violated his right to a fair trial by coercing an otherwise deadlocked jury into rendering a guilty verdict.
>
> **[\*P18]** The record indicates that prior to giving the dynamite charge to the jury, the trial court asked both parties if they agreed with the court's decision to provide the supplemental *Howard* instruction to the jury. Both parties agreed on the record, and the trial court subsequently gave the dynamite charge to the jury in open court. Neither the State nor the defense objected to the instruction as provided by the trial court to the jury.
>
> **[\*P19]** By acquiescing to the trial court's proposal to submit the dynamite charge to the jury, Rhines waived any error made by the trial court regarding the charge and cannot now complain that he was prejudiced. Furthermore, we note that the jury had been deliberating for over eleven hours when the instruction was given, hardly premature under such circumstances.
>
> **[\*P20]** Rhines' second assignment of error is overruled.

*State v. Rhines, supra*, ¶¶ 16-20.

The Warden asserts this claim is procedurally defaulted by Rhines' trial attorney's agreement that the "dynamite" charge as embodied in Ohio Jury Instructions 429.09 should be

given.  This is more than a forfeiture of the claim by failure to contemporaneously object; it is instead a deliberate waiver of any objection.  The court of appeals enforced this waiver against Rhines.  *Id.* at ¶ 19.  Rhines makes no response to this affirmative defense in his Reply.  Thus this Ground for Relief is barred by procedural default.

In the alternative, this Ground for Relief is without merit.   The court of appeals found no error in the content of the *Howard* instruction and that giving it after the jury had been deliberating more than eleven hours and had announced it was deadlocked was not premature.  *State v. Rhines, supra,* at ¶ 19.  The sole authority it cited was *State v. Howard*, 42 Ohio St. 3d 18 (1989), the case from which the "dynamite" charge takes its name in Ohio.  In *Howard*, the Ohio Supreme Court adopted the instruction used in this case, finding it to be less coercive of minority jurors than the traditional *Allen* charge.[2]  It noted, however, "that the United States Supreme Court still views *Allen* as good law."   *Howard*, 42 Ohio St. 3d at 23, n. 6, *citing Lowenfield v. Phelps*, 484 U.S. 231 (1988).   While the court of appeals did not discuss the federal precedent because *Howard* is more favorable to defendants than the *Allen* charge, its decision is not contrary to the United States Supreme Court precedent clearly established in *Lowenfield*.

It is therefore respectfully recommended that the Third Ground for Relief be dismissed with prejudice.

---

[2] The *Allen* charge takes its name from *Allen* v. *United States,* 164 U.S. 492 (1896).

**Ground Four:  Ineffective Assistance of Trial Counsel**

In his Fourth Ground for Relief, Rhines claims he received ineffective assistance of trial counsel in two respects:  (1) failure to hire and call an expert witness, particularly with respect to DNA, and (2) failure to request a continuance to deal with late-disclosed prosecution expert testimony (Petition, Doc. No. 2, PageID 52).

In his direct appeal, Rhines asserted ineffective assistance of trial counsel in his Fourth Assignment of Error, albeit in different terms than the claim he makes here.  The Second District Court of Appeals decided the assignment as follows:

> [*P34]  "DEFENDANT WAS DENIED THE EFFECTIVE ASSISTANCE OF TRIAL COUNSEL."
>
> [*P35]  In his fourth assignment, Rhines argues that he received ineffective assistance for the following reasons: 1) defense counsel did not call any witnesses for Rhines' case-in-chief, namely an accident re-constructionist; 2) defense counsel failed to object to juror note-taking at the beginning of the trial; and 3) defense counsel failed to ask the trial court to provide a limiting instruction regarding juror note-taking.
>
> [*P36]  "We review the alleged instances of ineffective assistance of trial counsel under the two prong analysis set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), and adopted by the Supreme Court of Ohio in *State v. Bradley* (1989), 42 Ohio St.3d 136, 538 N.E.2d 373, * * * . Pursuant to those cases, trial counsel is entitled to a strong presumption that his or her conduct falls within the wide range of reasonable assistance. *Strickland*, 466 U.S. at 688. To reverse a conviction based on ineffective assistance of counsel, it must be demonstrated that trial counsel's conduct fell below an objective standard of reasonableness and that his errors were serious enough to create a reasonable probability that, but for the errors, the result of the trial would have been different. *Id*. Hindsight is not permitted to distort the assessment of what was reasonable in light of counsel's perspective at the time, and a debatable decision concerning trial strategy cannot form the basis of a finding of ineffective assistance of counsel." (Internal citation omitted). *State v. Mitchell*, 2d Dist. Montgomery No. 21957, 2008 Ohio 493, ¶

31.

**[\*P37]** An appellant is not deprived of effective assistance of counsel when counsel chooses, for strategic reasons, not to pursue every possible trial tactic. *State v. Brown*, 38 Ohio St.3d 305, 319, 528 N.E.2d 523 (1988). The test for a claim of ineffective assistance of counsel is not whether counsel pursued every possible defense; the test is whether the defense chosen was objectively reasonable. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L. Ed. 2d 674. A reviewing court may not second-guess decisions of counsel which can be considered matters of trial strategy. *State v. Smith*, 17 Ohio St.3d 98, 17 Ohio B. 219, 477 N.E.2d 1128 (1985). Debatable strategic and tactical decisions may not form the basis of a claim for ineffective assistance of counsel, even if, in hindsight, it looks as if a better strategy had been available. *State v. Cook*, 65 Ohio St.3d 516, 524, 605 N.E.2d 70 (1992).

**[\*P38]** "The failure to call an available witness whose testimony could acquit the defendant can constitute ineffective assistance of counsel. Nevertheless, there is a presumption that any challenged action on the part of defense counsel 'might be considered sound trial strategy.' Decisions regarding the calling of witnesses will often fall within the range of acceptably sound trial strategy." *State v. Johnson*, 2d Dist. Montgomery No. 16803, 1998 Ohio App. LEXIS 3592, 1998 WL 453768 (Aug. 7, 1998), (citations omitted). The Ohio Supreme Court has recognized that whether to call an expert is a matter of trial strategy, and "the failure to call an expert and instead rely on cross-examination does not constitute ineffective assistance of counsel." *State v. Nicholas*, 66 Ohio St.3d 431, 436, 613 N.E.2d 225 (1993); see also *State v. Thompson*, 33 Ohio St.3d 1, 10-11, 514 N.E.2d 407 (1987).

**[\*P39]** After a thorough review of the record, we conclude that Rhines has failed to establish that he was prejudiced by his counsel's failure to call any expert witnesses and/or an accident re-constructionist in order to challenge the State's case. As to the DNA expert testimony, the State's forensic expert, Mary Cicco, testified that her tests would establish only that DNA was or was not present on an item, but not the manner in which it was deposited in a specific area. Cicco testified that she discovered the DNA of Yarborough on the driver's side airbag, as well as the DNA of the stolen vehicle's owner's son, Radwan Jaber. Cicco testified that Rhines' DNA, however, was not found anywhere in the vehicle. The absence of Rhines' DNA does not establish who was operating the vehicle. Cicco testified that if the airbag deployed and hit Rhines in an area of his body where he was fully

25

clothed, then she would not expect to find a DNA transfer. Defense counsel did aptly elicit testimony from Cicco that Rhines' DNA was not found anywhere in the vehicle, while Yarborough's DNA was found on the driver's side airbag, thus permitting an inference that Rhines was not in the vehicle when it crashed or was not driving it. Such testimony was arguably helpful to the defense, and defense counsel was not deficient for failing to call its own expert in this regard.

[*P40] Similarly, defense counsel was not ineffective for failing to call an accident re-constructionist to testify. Initially, we note that the State presented the testimony of eyewitnesses who observed the crash as it occurred, namely Eric Suttman and David Humphrey. The witnesses were able to provide the jury with a detailed description of the crash itself and the individuals involved. Significantly, an accident re-constructionist would be unable to offer any testimony going to the heart of the case; that is, who, in fact, was driving the vehicle when the deadly collision occurred. Thus, defense counsel was not ineffective for failing to retain the services of an accident re-constructionist to testify during trial.

[*P41] Rhines also argues that it was deficient for his counsel to fail to request a continuance in order to retain an expert DNA witness and an accident re-constructionist. We have already concluded that defense counsel was not ineffective for failing to call his own DNA expert and accident re-constructionist. Furthermore, we cannot find that counsel was ineffective for failing to request a continuance in order to retain his own expert testimony. We note that the record is not clear as to when Rhines' counsel learned about the DNA testimony, but nevertheless, the absence of Rhines' DNA was arguably exculpatory, not incriminating. Thus, any decision to proceed to trial was a matter of trial strategy. The record establishes that defense counsel vigorously cross-examined all of the State's witnesses, and Rhines fails to demonstrate how any additional preparation time and expert consultation would have changed the outcome of the case.

[*P42] Lastly, Rhines asserts that his trial counsel was ineffective for failing to object to the trial court's decision to permit the jurors to take notes during the trial. We have already found, however, that the trial court did not err when it permitted the jury to take notes. Moreover, contrary to Rhines' repeated assertion, the trial court did, in fact, provide the jury with a limiting instruction regarding the jurors' decision to take and use notes during trial and deliberations. Rhines has failed to establish that his counsel's performance fell below an objective standard of reasonableness.

26

[*P43] Rhines' fourth assignment of error is overruled.

*State v. Rhines, supra,* ¶¶ 34-43.

Respondent argues that this decision of the court of appeals is neither contrary to nor an objectively unreasonable application of the relevant Supreme Court precedent, *Strickland v. Washington*, *supra*. (Return of Writ, Doc. No. 5, PageID 1441-48.)

In his Response to Return [Reply], Rhines emphasizes the lack of a DNA expert for the defense. As the record establishes, Yarborough's DNA was found on the driver's side airbag and Rhines' DNA was found nowhere in the stolen car. Rhines asserts:

> The fact remains perfectly clear that DNA evidence shows that Yarbrough [sic] was behind the steering-wheel of the stolen vehicle on the air-bag, which the function of the air-bag is to deploy upon collision of impact. A DNA expert will tell you that where ever [sic] there is a touch there is a trace in which DNA is found. Petitioner's DNA was not found inside of the stole [sic] vehicle.

(Doc. No. 7, PageID 1451.) The difficulty with Rhines' position is that his claim about what a DNA expert would have testified to is completely speculative. He did not make use of the remedy provided by Ohio law for showing relevant facts which were not presented at trial, to wit, a petition for post-conviction relief with attached new evidence. No Ohio court has been presented with what a defense DNA expert actually would have said and thus Rhines cannot established the prejudice required by Strickland to show ineffective assistance of trial counsel. This Ground is without merit.

**Conclusion**

Based on the foregoing analysis, it is respectfully recommended that the Petition be dismissed with prejudice.  Because reasonable jurists would not disagree with this conclusion, Petitioner should be denied a certificate of appealability and the Court should certify to the Sixth Circuit that any appeal would be objectively frivolous.

December 3, 2013.

s/ *Michael R. Merz*
United States Magistrate Judge

**NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to seventeen days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F). Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within fourteen days after being served with a copy thereof.  Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140, 153-55 (1985).